NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

25-P-103                                              Appeals Court

IN THE MATTER OF A.H.


No. 25-P-103.

Worcester.      May 4, 2026. – July 13, 2026.

Present:  Walsh, Hershfang, & D'Angelo, JJ.


Practice, Civil, Civil commitment, Commitment of mentally ill
     person.  Witness, Expert, Physician.  Regulation.



     Petition for civil commitment filed in the Worcester
Division of the District Court Department on January 13, 2021.

     The case was heard by Robert J. Pellegrini, J.


     Susan F. Ennis for the respondent.
     Alexander Weiss, Assistant Attorney General, for the
petitioner.


     D'ANGELO, J.  This case turns on whether the record

sufficiently established that A.H.'s diagnosis of intermittent

explosive disorder (IED) qualified as a "mental illness" for

purposes of 104 Code Mass. Regs. § 27.05(1) (2019), the

Department of Mental Health (department) regulation applicable

to involuntary civil commitments under G. L. c. 123, §§ 7 and 8.

A.H. appeals from a decision and order of the Appellate Division of the District Court (Appellate Division) affirming a District Court judge's order granting the petition for involuntary civil commitment filed by Worcester Recovery Center and Hospital (petitioner).  We conclude that there was sufficient evidence for the judge to find that A.H.'s IED diagnosis constituted a mental illness as defined by 104 Code Mass. Regs. § 27.05(1), in accordance with G. L. c. 123, § 2.  We further conclude that the judge did not err in finding that there was no less restrictive alternative to A.H.'s commitment.  We therefore affirm the decision and order of the Appellate Division.

1.  Background.  We recite the facts in the light most favorable to the petitioner.  See Fazio v. Fazio, 375 Mass. 394, 402 (1978).  On January 13, 2021, the petitioner filed a petition pursuant to G. L. c. 123, §§ 7 and 8, to civilly commit A.H.  Testimony at the hearing established that A.H. had a significant history of struggling to independently conduct the activities of daily life, of aggressive and assaultive behavior toward others, and of accosting others with inflammatory and threatening racial slurs.  In the year prior to the hearing, A.H. punched a nurse with such force that it caused a fracture to the nurse's orbital bone.  The petitioner's expert, who was A.H.'s treating psychiatrist, also testified that A.H. required observation while eating due to a risk of choking.

The petitioner's expert further testified that A.H. suffered from IED, which is a "substantial disorder" included in both the department's regulations and the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (DSM-V). The petitioner's expert opined that IED manifested itself in A.H. as a substantial disorder of mood. The petitioner's expert explained that although IED is not characterized as a mood disorder by the DSM-V, "in [A.H.'s] case, it can be a mood disorder because it affect[ed] his mood."

The petitioner's expert further opined that IED caused a gross impairment of A.H.'s behavior and that he could become extremely agitated and angry, and without warning. She also testified that the disorder manifested in unpredictable angry outbursts arising from minor provocations (such as someone's changing the television channel or A.H.'s being frustrated by a peer sitting nearby) or without any apparent provocation. She stated that the disorder grossly impaired A.H.'s judgment, as "he continue[d] to lash out and strike out at staff" members despite desiring to be discharged.

The petitioner's expert also opined that because of his mental illness, A.H. posed a substantial risk of harm to himself and to others. A.H. had committed at least twenty-five

attempted assaults, including six assaults after which mechanical restraints had to be applied.

The petitioner's expert stated that IED caused A.H. to be unable to live independently and to meet the ordinary demands of life, such that he would not change his clothes without prompting, would not take care of his health or appearance, and had difficulty swallowing, creating a risk of choking and necessitating supervision while eating. She also opined that there was no less restrictive alternative available for A.H. She testified that A.H. required assistance with his daily tasks, and although the petitioner had looked for an alternative group living environment for A.H. through the Department of Developmental Services (DDS), A.H. was not eligible for those services because he needed to be restraint free for three months (a requirement that he had been unable to meet).

A.H. called an expert psychiatrist to testify. A.H.'s expert agreed with the petitioner's expert that A.H. suffered from IED, that A.H. was dangerous and posed a risk of harm if released into the community, and that there was no less restrictive placement presently available to A.H. However, A.H.'s expert opined that A.H. did not meet the criteria for commitment because IED is not a "disorder of mood" for purposes of 104 Code Mass. Regs. § 27.05(1), nor is it characterized as such in the DSM-V.

The judge committed A.H. for a period not to exceed one year.  A.H. appealed to the Appellate Division, which affirmed the commitment order.  A.H. thereafter appealed to this court.

2.  Discussion.  a.  Legal framework.  "General Laws c. 123, §§ 7 and 8, address the long-term commitment of persons with mental illness."  Matter of J.D., 97 Mass. App. Ct. 15, 18 (2020).  To support a civil commitment under G. L. c. 123, §§ 7 and 8, a petitioner must prove beyond a reasonable doubt that (1) a person is suffering from a mental illness, (2) discharge from a facility would create a likelihood of serious harm, and (3) no less restrictive alternative to hospitalization is available.  See Matter of J.P., 486 Mass. 117, 118-119 (2020).  Although commitments are not criminal, the "proof beyond a reasonable doubt" standard, universally applicable to criminal cases, applies.  Id. at 118.

We "scrutinize without deference the propriety of the legal criteria employed by the [hearing] judge and the manner in which those criteria were applied to the facts."  Matter of A.M., 94 Mass. App. Ct. 399, 401 (2018), quoting Iamele v. Asselin, 444 Mass. 734, 741 (2005).  We review the hearing judge's findings of fact for clear error.  See Matter of a Minor, 484 Mass. 295, 302 (2020) ("The hearing judge is in the best position to weigh the evidence, assess the credibility of witnesses, and make findings of fact").  Clear error exists when a reviewing court,

after considering the entire record, is left "with the definite and firm conviction that a mistake has been committed" (citation omitted).  Marlow v. New Bedford, 369 Mass. 501, 508 (1976).

b.  Mental illness.  A.H. contends that IED does not constitute a mental illness permitting involuntary commitment under G. L. c. 123, §§ 7 and 8.  We disagree.

The definition for mental illness is not set forth in the statute, see G. L. c. 123, § 2, but rather is set forth in regulations promulgated pursuant to c. 123.  See 104 Code Mass. Regs. § 27.05(1).  Per the department's regulation,

> "For the purpose of involuntary commitment, mental illness is defined as a substantial disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality or ability to meet the ordinary demands of life, but shall not include intellectual or developmental disabilities, autism spectrum disorder, traumatic brain injury or psychiatric or behavioral disorders or symptoms due to another medical condition as provided in the [DSM-V] . . . ."

104 Code Mass. Regs. § 27.05(1).

Both experts diagnosed A.H. with IED.  Sufficient evidence existed for the judge to conclude that IED was a mental illness pursuant to G. L. c. 123 and 104 Code Mass. Regs. § 27.05(1).  The petitioner's expert opined that IED is a substantial disorder of mood and that the disorder grossly impaired A.H.'s judgment and behavior and prevented him from meeting the ordinary demands of life.  She also opined that IED is a mental illness that meets the criteria for commitment under 104 Code

Mass. Regs. § 27.05(1).  A.H.'s expert opined that IED is not categorized as a mood disorder in the DSM-V and is not a "disorder of mood" qualifying as a mental illness for purposes of 104 Code Mass. Regs. § 27.05(1).  The judge properly considered the testimony of the experts and the information in the DSM-V presented to him in concluding that IED was a mental illness.

The categorizations detailed in the DSM-V may inform but do not bind a hearing judge or this court in concluding whether a particular mental illness is contemplated by 104 Code Mass. Regs. § 27.05(1).  See Commonwealth v. DelVerde, 401 Mass. 447, 450 & n.5 (1988).  We see no requirement that the judge be constrained by the DSM-V's categorization of disorders.  There is no such limitation on the definition of mental illness in G. L. c. 123, § 2, or 104 Code Mass. Regs. § 27.05(1), and we will not read such a limitation into the definition.  See Retirement Bd. of Somerville v. Buonomo, 467 Mass. 662, 672 (2014).

A "substantial disorder of . . . mood" that "grossly impairs" a person's judgment can be a mental illness pursuant to 104 Code Mass. Regs. § 27.05(1).  See DelVerde, 401 Mass. at 450.  The judge was permitted to credit the petitioner's expert's testimony that A.H. could not care for himself and had angry outbursts -- sometimes unprovoked -- that caused him on

occasion to assault staff. This evidence demonstrated A.H.'s grossly impaired judgment and sufficiently supported the judge's conclusion that IED severely affected A.H.'s behavior and mood and that, as a result, A.H.'s mental condition fell within the regulatory definition of mental illness.

The judge permissibly credited the petitioner's expert's opinion, and other evidence, demonstrating that IED as manifested in A.H. constituted a substantial disorder of mood. That the experts did not agree is "irrelevant," as "[t]he law does not give the opinion of experts . . . the benefit of conclusiveness, even if there are no contrary opinions introduced at the trial" (quotation and citation omitted). DelVerde, 401 Mass. at 450. It was the judge's role to assess the weight and credibility of the evidence, including the experts' testimony. He did so, and we discern no clear error in his findings.[1]

c. Less restrictive alternative. Ordering hospitalization under G. L. c. 123, §§ 7 and 8, requires the absence of "any viable, plausibly available options that bring the risk of harm below . . . [a] 'very substantial risk.'" Matter of a Minor,

---

[1] In light of our conclusion, we are unpersuaded by A.H.'s contention that the petitioner, by purportedly failing to make the threshold showing of a mental illness under 104 Code Mass. Regs. § 27.05(1), also failed to meet its burden of demonstrating a likelihood of serious harm caused by such a mental illness.

484 Mass. at 310, quoting Matter of G.P., 473 Mass. 112, 128-129 (2015).  This is commonly referred to as the "least restrictive alternative" doctrine.  Commonwealth *v.* Nassar, 380 Mass. 908, 917-918 (1980) (in context of civil commitment proceedings, all parties should aim "to find the least burdensome or oppressive controls over the individual that are compatible with the fulfilment of the dual purposes of our statute, namely, protection of the person and others from physical harm and rehabilitation of the person").

The burden was on the petitioner to prove, beyond a reasonable doubt, that there was no less restrictive alternative to hospitalization.  See Matter of J.P., 494 Mass. 654, 661 (2024).  The absence of such an alternative may be shown through expert opinion testimony or other types of evidence, including a respondent's conduct within the facility and the absence of plausible alternatives.  See id. at 667, quoting Commonwealth v A.Z., 493 Mass. 427, 432-433 (2024).

There was ample evidence to support the judge's conclusion that there was no less restrictive alternative.  A.H. required assistance with his daily tasks, including basic grooming, caring for his health, and eating.  The petitioner had looked for alternative group living housing for A.H. through DDS and found that A.H. was not eligible for those services because he had not been restraint free for three months.  There was,

therefore, sufficient proof beyond a reasonable doubt that there was no less restrictive alternative.

<u>Decision and order of the Appellate Division affirmed</u>.